IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAUREN SIMMONS,

    Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

Civ. No. 04-1061-AA

OPINION AND ORDER

---

Alan Stuart Graf
Kimberly K. Tucker
1020 SW Taylor St., Ste. 230
Portland, OR 97205
    Attorneys for plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

1   - OPINION AND ORDER

Leisa A. Wolf
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104
    Attorneys for defendant

AIKEN, Judge:

Plaintiff Lauren Simmons brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's decision denying plaintiff's application for disability insurance benefits under Title II of the Act. For the reasons set forth below, the decision of the Commissioner is affirmed.

## BACKGROUND

On March 3, 1999, plaintiff applied for disability insurance benefits. Tr. 59-61. Her application was denied initially and upon reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). Tr. 46-49, 52-56. On March 5, 2002, plaintiff, who was represented by her attorney, appeared and testified at a hearing before the ALJ. Tr. 367-416. Plaintiff's husband, plaintiff's mother, and a vocational expert also appeared and testified. Tr. 367-416. The ALJ concluded that a consultative examination was needed. Tr.414. At a September 11, 2002, supplemental hearing, plaintiff and the vocational expert appeared and presented additional testimony. Tr. 335-66.

On February 25, 2003, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act. Tr. 30.

2    - OPINION AND ORDER

The Appeals Council denied plaintiff's request for review, and the ALJ's ruling became the final decision of the Commissioner. Tr. 6-8. Plaintiff now seeks judicial review.

At the time of the ALJ's decision, plaintiff was forty-seven years old, with a high school education and past relevant work as a waitress and data entry operator. Tr. 14, 351, 375-76.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardener, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and by substantial

evidence. Cequerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).

COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

In step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period of her alleged disability. Tr. 14; 20 C.F.R. § 404.1520(b). Second, the ALJ found that plaintiff's degenerative disc disease, status post cervical spine fusion, was a medically severe impairment. Tr. 28; 20 C.F.R. § 404.1520(c). In step three, the ALJ did not find that plaintiff's impairment was "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude gainful activity" or medically equivalent to any of the listed impairments. Tr. 28; 20 C.F.R. § 404.1520(d). Finally, the ALJ found that plaintiff retained the residual functioning capacity to

perform a wide range of light work activity and could return to her past relevant work as a data entry operator. Tr. 29; 20 C.F.R. § 404.1520(e). In light of this finding, the ALJ did not proceed to step five and found that plaintiff was not disabled within the meaning of the Act. Tr. 29.

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed and remanded for payment of benefits because the ALJ improperly rejected the opinions of plaintiff's treating physicians and the testimony of plaintiff and plaintiff's lay witnesses. Plaintiff also asserts that the ALJ's rejection of this evidence resulted in a deficient vocational hypothetical having no evidentiary value.

### A. The ALJ Properly Evaluated Plaintiff's Testimony.

First, plaintiff argues that the ALJ erroneously found plaintiff's testimony not credible. In determining whether to accept a claimant's subjective symptom testimony, the ALJ conducts a two-step analysis. The first step is the application of the Cotton analysis, which requires a plaintiff who is alleging disability based on subjective symptoms to: (1) produce objective medical evidence of an underlying impairment, and (2) show that the impairment could reasonably be expected to produce some degree of the alleged symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citing Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986)). If the Cotton analysis is satisfied, and there is no

5 - OPINION AND ORDER

affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so. Id. at 1283-84. In assessing credibility, the ALJ may consider ordinary credibility factors, such as prior inconsistent statements and testimony that appears less than candid. Id. at 1284. The ALJ must also consider the factors listed in Social Security Ruling (SSR) 88-13, including the claimant's work record and observations of physicians and third parties regarding matters such as the nature, onset, duration, and frequency of plaintiff's symptoms, precipitating and aggravating factors, functional restrictions, and daily activities. Id.; see SSR 88-13.

In the present case, the ALJ found plaintiff credible only to the extent the objective evidence supports her allegations. Tr. 29. The record contains extensive evidence to support the ALJ's credibility determination, and he provided clear and convincing reasons for his decision. For example, at the March 5, 2002, hearing, plaintiff submitted to the court two Medical Source Statements outlining her limitations. While the forms showed two different signatures, they contained virtually identical information, as well as identical handwriting. Tr. 21, 268-75. The ALJ stated that plaintiff offered these forms as assessments by treating physicians H. Derek Palmer, M.D., and Ronald Jollo, D.O. Tr. 21. Only after the ALJ specifically questioned her about the

forms did plaintiff admit that she completed them herself and then obtained the signatures of Drs. Palmer and Jollo. Tr. 21, 340-41. Thus, the ALJ's finding that plaintiff's misrepresentation of the Medical Source Statements "greatly damage[d] her credibility" is supported by evidence of record. Tr. 21.

Furthermore, the ALJ cited several instances where plaintiff's subjective complaints and her objective abilities were contradictory. Perhaps the primary example noted by the ALJ is an observation by Frank Trostel, D.O., who examined plaintiff in June 1999. Tr. 18, 221-25. During Dr. Trostel's examination, plaintiff complained of pain and "flinche[d] upon even light palpation in the cervical, thoracic, and lumbar areas." Tr. 222. However, after the exam, Dr. Trostel found it curious that plaintiff walked briskly to her car, which was parked thirty feet away, rotated her entire body and neck to retrieve something from the back seat, shook her head "vigorously" to get hair out of her face while applying makeup, and flexed her head and neck up and down to look into her makeup bag and see herself in the mirror. Tr. 223. Dr. Trostel also observed plaintiff rotate her neck eighty degrees to the right to talk to her female companion in the passenger seat and then rotate her neck fully to the left and right before pulling into traffic. Tr. 223.

Similarly, Michelle Whitehead, MHNP, Ph.D., performed a mental status examination of plaintiff in April 2002. Tr. 288-95.

Plaintiff reported not taking any medication prior to the exam, and complained of neck pain and severe muscle spasms. Tr. 288, 290. However, Dr. Whitehead noted in her report that she observed plaintiff leaving the examination without any display of stiffness, difficulty walking, or difficulty getting into her car. Tr. 293. She observed no discernable discomfort and saw plaintiff turn her head several times. Tr. 293.

Other contradictions noted by the ALJ include plaintiff's part-time work as a waitress for almost two years following the onset of her alleged disability. Tr. 16. This work activity continued during the same time period that plaintiff reported "constant 10/10" pain to Nancy Maloney, M.D., who treated plaintiff for pain control. Tr. 195. The ALJ also noted that Tyler Arkless, M.D., found normal motor strength and no muscle atrophy or wasting during a May 2002 exam, despite plaintiff's reports that during a typical eight-hour day she spends seven hours lying down to control her neck pain. Tr. 26, 319, 322-27.

Finally, the ALJ provided examples of plaintiff's contradictory statements. For instance, he stated that in her examination with Dr. Arkless, plaintiff reported she could only tolerate one ten-minute walk per day, Tr. 319; however, she testified at her hearing that she had "no problems" walking, other than difficulty seeing because of neck stiffness. Tr. 26, 400-01. In sum, the ALJ provided clear and convincing reasons to support

his determination of plaintiff's credibility, and such reasons are supported by substantial evidence in the record.

## B. The ALJ Properly Evaluated the Treating Physicians' Opinions.

Next, plaintiff argues that the ALJ improperly rejected the opinions of plaintiff's treating physicians, specifically, June Worthington, D.O., Ronald Jollo, D.O., and H. Derek Palmer, M.D. To reject a treating physician's opinion which conflicts with that of an examining physician, the ALJ must "make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Smolen, 80 F.3d at 1285 (quoting Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). The ALJ can satisfy this requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton, 799 F.2d at 1408). However, to the extent that the nontreating physician's opinion is based on objective clinical tests, it must be viewed as substantial evidence. Id. at 751.

In the present case, plaintiff was examined by at least twelve different physicians after the alleged onset date of her disability, with no consensus as to the nature of, and appropriate treatment for, plaintiff's medical condition. After reviewing the evidence of record, I find that the ALJ properly considered and evaluated the medical evidence. Each of the treating physicians'

opinions will be discussed individually.

First, the ALJ properly evaluated the opinion of Dr. June Worthington, a family practice specialist who treated plaintiff for approximately two years, until January 1999.[1] Dr. Worthington began seeing plaintiff around the time of plaintiff's June 1997 surgery, a C5-6 anterior cervical fusion with iliac crest bone graft. Tr. 15. As plaintiff points out, one reason the ALJ rejected Dr. Worthington's opinion was based on an alleged lack of medical records to support the physician's initial conclusions. Tr. 15. Dr. Worthington's medical records appear to begin with two prescription pad notes, the first of which is dated July 23, 1997. Tr. 219. Each note explains plaintiff's inability to work due to muscle spasms. Tr. 219. However, the record shows evidence of Dr. Worthington's examination of plaintiff on July 6, 1997, before she wrote the above notes. Tr. 158-60. Although the ALJ apparently overlooked the previous record, the lack of medical records prior to July 1997 was not the sole reason for rejecting Dr.

---

[1] Although plaintiff claims the ALJ failed to fully develop the record by not obtaining medical records dated prior to July 1997, this argument is without merit. While Dr. Worthington made a passing reference to "several" other physicians at her clinic who saw plaintiff, Tr. 205, plaintiff did not name any other doctors in her forms to the Social Security Administration. For example, in her Disability Report, plaintiff listed six physicians who provided relevant treatment. Tr. 89-90, 92, 95. The record shows that all material medical records appear to have been requested and obtained, and the ALJ explicitly requested all relevant medical evidence to fully develop the record. Tr. 337-38, 369-70, 372, 378-79, 414-15.

Worthington's opinion. Rather, the ALJ set out a detailed and thorough summary of the facts and conflicting evidence, thus satisfying the requirement that he make specific, legitimate reasons for rejecting the treating physician's opinion. Tr. 15-21, 24-28; see Magallenes, 881 F.2d at 751.

For example, in subsequent visits with Dr. Worthington, plaintiff stated she was "doing very well," and was "much more functional." Tr. 17, 212. In fact, plaintiff increased her work schedule to twenty hours per week as a waitress in June 1998. Tr. 212. By August 1998, Dr. Worthington noted that plaintiff had joined a gym and was participating in recreational and physical activities. Tr. 17, 211. Plaintiff stated that she could "live life again." Tr. 211. Although plaintiff's condition appeared to worsen after she was in a car accident in September 1998, she had no complaints of neck problems or muscle spasms at the time of her final visit with Dr. Worthington in January 1999. Tr. 17, 205.

Despite the above improvements, the ALJ found that Dr. Worthington continued to prescribe long-term narcotics, even though other treating physicians recommended against such treatment. Tr. 16. Specifically, the ALJ noted that both Dr. Kim Burchiel, a professor and chairman of neurosurgery at Oregon Health Sciences University, and Dr. Nancy Maloney, a board-certified specialist in physical medicine and rehabilitation, recommended that plaintiff not remain on long-term narcotics. Tr. 16, 169, 196. In light of

these inconsistencies, substantial evidence in the record supports the ALJ's determination.

Second, the ALJ properly evaluated the opinion of Dr. Ronald Jollo, who treated plaintiff for approximately one year, beginning in February 1999. During plaintiff's first visit, she presented the following: "neck pain, can't work, wonders about length of methadone use, loss of effectiveness." Tr. 238. It does not appear that Dr. Jollo conducted any clinical tests to objectively measure plaintiff's condition. Rather, he simply continued to prescribe narcotics, as had Dr. Worthington, based solely on plaintiff's subjective complaints. Tr. 237-38.

On plaintiff's second visit, she reported depression and problems with her disability claim. Tr. 236. Again, it appears that Dr. Jollo performed no clinical tests to objectively measure plaintiff's condition. Yet, after only two appointments and no comprehensive medical examination, Dr. Jollo wrote, "My above named patient is disabled due to C-spine condition and is unable to work. This condition should be considered to be permanent. Her social security disability is pending." Tr. 130. The ALJ found this opinion to be "premature and not based upon objective findings." Tr. 18. An ALJ need not accept a treating physician's opinion which is "brief and conclusory in form with little in the way of clinical findings to support [its] conclusion." Magallenes, 881 F.2d at 751 (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir.

1986)). Dr. Jollo's opinion in this case is clearly of that nature.

Additionally, in the two months following Dr. Jollo's initial opinion that plaintiff was permanently disabled, he noted that plaintiff had "excellent pain control," which was allowing her to be more active, and she was able to do her "basic instrumental ADL" (activities of daily living). Tr. 235. He also wrote that plaintiff's presumed inability to work was not permanent; he simply could not estimate when she could return to work. Tr. 227.

Although Dr. Jollo ultimately concluded that plaintiff would not be capable of physical employment for at least twelve months, Tr. 227, this opinion is contradicted by Dr. Frank Trostel, who examined plaintiff during the same time period. Dr. Trostel found "no disabling condition." Tr. 223. In considering the conflicting opinions, the ALJ once again noted that Dr. Jollo had not performed a comprehensive physical exam of plaintiff, but merely continued prescribing narcotics when he took over plaintiff's case. Tr. 19. Thus, the ALJ provided specific, legitimate reasons for rejecting Dr. Jollo's opinion, and such reasons are supported by substantial evidence in the record.

Finally, the ALJ properly evaluated the opinion of Dr. H. Derek Palmer, who treated plaintiff from October 2001 through the date of plaintiff's hearings. The record indicates that the only time Dr. Palmer physically examined plaintiff was during her first

visit, upon which he found the following: no tenderness to percussion of the spine; pain with pressure over the neck; decreased range of motion in the neck; cranial nerves intact; gait normal; and normal strength in the hands and upper arms. Tr. 287. Plaintiff told Dr. Palmer that another doctor had recommended chronic narcotic therapy and that she stopped seeing Dr. Jollo because she felt she was not getting a high enough dose of pain medication. Tr. 287. Plaintiff's subsequent visits primarily revolved around obtaining pain medication and dealing with numbness and pain in her hands, later identified as mild to moderate carpal tunnel syndrome. Tr. 280, 282-86.

In February 2002, Dr. Palmer wrote a letter on plaintiff's behalf, stating the following: "I wish to register my opinion that it would be extremely difficult for [plaintiff] to return to work. Although she is mentally intact, it is hard to imagine the kind of work that would allow her to use her talents in a meaningful way as far as employment is concerned." Tr. 276. As the ALJ correctly pointed out, this statement offers no definitive information relative to disability. Tr. 21. Dr. Palmer is not a vocational expert and provided no medical basis for his opinion. Tr. 21. The ALJ's classification of this statement as one merely "in support of his patient's self-reported limitations" is appropriate based on the evidence in the record. It is not the role of this court to evaluate the medical evidence of record; rather it is the ALJ who

must evaluate the relevant evidence and resolve inconsistencies or ambiguities in the evidence of record. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); see also Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). Given the ALJ's credibility findings, the conflicting medical evidence, and the limited clinical findings noted by Dr. Palmer, the ALJ's decision to reject Dr. Palmer's opinion is supported by substantial evidence.

C. The ALJ Properly Evaluated the Lay Witnesses' Testimony.

Plaintiff also asserts that the ALJ erred by implicitly rejecting the lay witness testimony of plaintiff's mother, husband, and employer without providing reasons for doing so. However, the record compels the opposite conclusion. First, the ALJ accounted for the lay witnesses' observations in his findings. Second, the ALJ clearly explained his rationale in rejecting a specific portion of one of the witness's testimony.

In explicitly rejecting part of the testimony of plaintiff's mother, Shirley Yates, the ALJ was particularly concerned with Mrs. Yates's clear recollection of plaintiff's visit to Dr. Trostel's office, an event that had occurred three years prior. Tr. 22-23, 406. Mrs. Yates testified that it was she, not plaintiff, who reached into the back seat and who looked both ways before plaintiff drove into traffic. Tr. 404-06. However, she also admitted that she only knew about Dr. Trostel's report after plaintiff told her about it. Tr. 408. The ALJ found this

testimony difficult to accept. Tr. 22-23. As the ALJ stated, "[a] simultaneous recording of an observation, by a physician who is trained to make accurate objective observations, is far more reliable than the three-year later 'recollections' of an elderly witness who was 'reminded' about the events in question by the claimant." Tr. 23. Thus, I find no error in the ALJ's rejection of this portion of Mrs. Yates's testimony.

Further, the ALJ accounted for the limitations noted by plaintiff's husband and mother in his findings. For example, Mrs. Yates testified that plaintiff had difficulty lifting her arms and thus was no longer able to help Mrs. Yates with her hair. Tr. 403. Plaintiff's husband testified that plaintiff could no longer go bowling, fishing, or hunting, or travel in long car rides because of the vibration. Tr. 411-12. He also testified that he cooks most of the evening meals and that both he and plaintiff tried to keep up the vacuuming and house cleaning. Tr. 412.

In his findings, the ALJ accounted for these limitations by concluding that plaintiff retained the residual functioning capacity to perform a wide range of light activity work, requiring no more than occasional pushing, pulling, or reaching with her left upper extremity. Tr. 29. Furthermore, the ALJ found that plaintiff should only occasionally climb, balance, stoop, kneel, crouch, or crawl, and she should avoid concentrated exposure to temperature extremes, vibration, and hazards. Tr. 29. These

limitations are consistent with those noted by plaintiff's mother and husband. Because the ALJ properly accounted for the accepted lay witness testimony in his findings and provided clear reasoning for rejecting the lay witness testimony he did not accept, plaintiff's contention of error fails.

D. The Vocational Hypothetical Was Sufficient.

Finally, plaintiff argues that the ALJ's improper rejection of the medical evidence and witness testimony resulted in a deficient vocational hypothetical. As discussed above, I find no error in the ALJ's consideration of the medical opinions and testimony. Therefore, the vocational hypothetical was sufficient and supported by the record.

CONCLUSION

The ALJ's finding that plaintiff was not disabled under the Act is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is AFFIRMED and this case is dismissed.

IT IS SO ORDERED.

Dated this 28 day of January, 2006.

*Ann Aiken*
Ann Aiken
United States District Judge